FILED

2006 Apr-05  PM 02:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JAMES FREEMAN,

     Plaintiff,

v.                             CASE NO. 5:05-CV-00898-IPJ

TOPRE AMERICA CORPORATION,

     Defendant.

### MEMORANDUM OPINION

Pending before the court is the defendant's motion for summary judgment (doc. 17), supporting brief (doc. 18) and evidentiary submissions (docs. 19-22). Plaintiff filed a response (doc. 25) and supporting evidence  (doc. 26), to which Defendant filed a reply (doc. 28).  The court has carefully considered the motion, evidence and arguments submitted by the parties in support of their respective positions.

### I.  FACTUAL BACKGROUND

Plaintiff, a white male, was initially employed by Defendant as a janitor on or around March 15, 2004. (Freeman Depo. at 56).  Defendant manufactured stamp automobile parts for automobile companies.  (*Id*. at 40).  Plaintiff's duties

1

included cleaning offices, the plant and restrooms.  (*Id*. at 57).  Plaintiff also drove a forklift to "dump dumpsters," ran a compactor, and did other miscellaneous tasks as needed.  (*Id*. at 57).

After telling his supervisors of his intentions to rise within the company, Plaintiff ultimately received a promotion from janitor to crane operator.  (*Id*. at 82).  Plaintiff received a pay increase with this promotion.  (*Id*. at 84).[1]  As a new crane operator, Plaintiff received training and took tests in July 2004.  (*Id*. at 86-88).  Plaintiff acknowledges that he not only passed, but also  received good scores on both his written and practical evaluations.  (*Id*. at 89).  As a crane operator, Plaintiff used the crane to move dies into the presses.  (*Id*. at 45).

On Plainiff's first day as a crane operator, Plaintiff made contact with a plastic light fixture on the side of a press.  (*Id*. at 113).  Plaintiff did not report this damage because he did not know damage had occurred.  (*Id*. at 115).  Plaintiff says he would have reported the damage had he known of its existence.  (*Id*. at 116).

On or about November 9, 2004, Plaintiff was stacking a die on the floor.  (*Id*. at 118-119).  The die slipped out of the ropes which were holding it and began to fall.  (*Id*. at 121).  Plaintiff used the crane to catch the die. (*Id*. at 121).  Plaintiff

---

[1]Plaintiff is not asserting a claim based on a failure to promote.  Rather, Plaintiff's claim is based completely on the events surrounding his termination.  Pl. Dep. at 85.

believes, but is not certain, that the die did not hit the ground.  (*Id*. at 124).

Plaintiff examined the external portion of the die and the floor before he resumed

moving the die to the appropriate place.  (*Id*. at 122).  Plaintiff does not recall

seeing damage to either the die or the floor.  (*Id*. at 122).

Although Plaintiff understood that all accidents and "near-misses" were to

be reported immediately, Plaintiff did not report the incident of November 9 to

anyone.  (*Id*. at 103, 128).  Plaintiff said he did not report the incident because he

did not think any damage had occurred.  (*Id*. at 128).  Plaintiff did not report the

incident as a near-miss either.  (*Id*. at 129).  Plaintiff described his failure to report

the incident as "my error in judgment."  (*Id*. at 129).  When asked if should have

reported the incident (employing his hindsight), Plaintiff answered, "[a]bsolutely."

(*Id*. at 129).

Plaintiff acknowledged receiving and reviewing  Defendant's policy of

business ethics and conduct.  (*Id*. at 64).  This policy states, in part, that

"[d]isregarding or failing to comply with the standard of business ethics and

conduct could lead to disciplinary action, up to and including possible termination

of employment."  (English Aff. Exhibit 3).

Plaintiff's supervisor, Mr. Robert Benefield (white male), learned of the

incident with the dropped die.  (Freeman Depo. at 133).  Mr. Benefield asked

3

Plaintiff if he had dropped the die. (*Id*. at 133). Plaintiff told Mr. Benefield he "almost dropped the die." (*Id*. at 133). When asked if he damaged the die, Plaintiff said, "I do not think I damaged the die." (*Id*. at 133). Later, Plaintiff was summoned to the supervisor's office. (*Id*. at 135). Plaintiff was met in the office by Mr. Benefield and Mr. Carl English, Human Resources Director. (*Id*. at 135). Mr. English told Plaintiff not reporting the die dropping incident was cause for termination. (*Id*. at 137). Plaintiff responded that he thought his termination was coming. (*Id*. at 137). Plaintiff was then terminated for "attempting to cover up and mislead management about damaging the die after failing to properly report the incident." English Aff. at ¶ 18.

Plaintiff testified during his deposition that he was never told anything by anyone at Topre that led him to believe the company discriminated against him because of his race prior to his termination. (Freeman Depo.at 141). Plaintiff also testified the same regarding the time period since his termination from Topre. (*Id*. at 142). When asked why he believed Defendant discriminated against him based on his race, Plaintiff stated that he did not believe he would have been fired if he was black or Japanese. (*Id*. at 144). When asked why he believed he would not have been fired had he been black or Japanese, Plaintiff stated, "it's easier to fire a white person than it is to fire a black person or a Japanese." (*Id*. at 144).

4

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp.,* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324, Fed. R. Civ. Pro. 56(e).  In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  That party must demonstrate that there is a "genuine issue for trial."  Fed. R. Civ. Pro. 56(e); *Matsushita*, 475 U.S. at 587;  *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986).  A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment.  *Brown v. Am. Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir. 1991).

Additionally, the court may disregard affidavits submitted on summary judgment motions which contradict material facts given in an earlier sworn statement.  Under Eleventh Circuit precedent, the court may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by the affiant's deposition testimony.  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003).  "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony."  *Van T.*

6

*Junkins and Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).

## III.  DISCUSSION

The court must consider the evidence in the light most favorable to the plaintiff and may not make credibility determinations nor weigh the parties' evidence.  *Frederick v. Sprint/United Mgmt. Co.* 246 F.3d 1305, 1311 (11th Cir. 2001); *Stewart v. Booker T. Washington Ins*., 232 F.3d 844, 848 (11th Cir. 2000). With these standards in mind, the court considers the plaintiff's claims.

The plaintiff asserts that the defendant terminated him from employment due to his race.  The plaintiff has offered no direct proof of such discrimination.

When evidence of discrimination is circumstantial in nature, the Supreme Court has fashioned a three prong test for focusing the court's examination of the evidence and allegations.  *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973); *Tex. Dep't. of Cmty.  Affairs v. Burdine,* 450 U.S. 248; 252-253; 101 S.Ct. 1089, 1093-1094 (1981); *Busby v. City of Orlando*, 931 F.2d 764, 777 (11th Cir. 1991).  First, the plaintiff must establish a *prima facie* case of discrimination.  *McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Establishment of a *prima facie* case creates a presumption that the employer unlawfully discriminated against the employee.  *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir.

7

1997).  Meeting this burden creates a presumption of discrimination.  *Combs*, 106 F.3d at 1528.

After the plaintiff has established a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory employment action.  *Hall v. Ala. Ass'n of Sch. Bds,* 326 F.3d 1157, 1166 (11th Cir. 2003).  The defendant can feasibly present such strong evidence of a nondiscriminatory rationale that summary judgment is warranted.  *Brown v.  Am. Honda Motor Co., Inc.,* 939 F.2d 946, 950 (11th Cir. 1991), *cert. denied*, 502 U.S. 1058 (1992)(quoting *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 596 (11th Cir. 1987).

Once a defendant presents a legitimate, nondiscriminatory reason for its action, the presumption of discrimination drops from the case. *Burdine,* 450 U.S. at 255, 101 S.Ct. at 1094 n.10.  The plaintiff must then demonstrate by a preponderance of the evidence that the reason offered by the defendant was not the true reason for the employment decision, but rather a mere pretext for discrimination.  *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. at 1825.  The employee may satisfy this burden by persuading the court that the proffered reason for the employment decision is not worthy of belief.  *Hall*, 326 F.3d at 1166.

The plaintiff has not established a prima facie case of race discrimination.

The plaintiff meets his prima facie burden of proof by establishing that (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment action; and (4) his employer treated similarly situated employees outside the protected classification more favorably. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 842-43 (11th Cir. 2000), citing *Holifield v. Reno*, 115 F.3d 1555, 1562-63 (11th Cir. 1997).

The parties do not dispute whether Plaintiff meets the first three elements of his prima facie case. Plaintiff's status as a member of a protected class is not in dispute. Also, Defendant does not deny that Plaintiff was qualified for his position and that Plaintiff's employment was terminated. However, the parties dispute whether similarly situated employees outside the protected class were treated more favorably than Plaintiff. Most importantly, Plaintiff has failed to present any evidence showing that other similarly situated employees were treated more favorably.

The Eleventh Circuit has held that in order to show that employees are similarly situated, the plaintiff must establish that the "employees are similarly situated in all relevant aspects." *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). "In determining whether employees are similarly situated for purposes of establishing a prima facie case, it is necessary to consider

9

whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  "If a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Id.* (citing *Mack v. Great Atlantic and Pacific Tea Co.*, 871 F.2d 179, 182 (1st Cir. 1989)).

Plaintiff asserts that Mr. Troy Wilson, a black male, was treated less severely than Plaintiff after a more serious incident.  (Freeman Depo. at 145). Plaintiff and Mr. Wilson operated both forklifts and cranes during their concurrent employment with Defendant.  (*Id*. at 147).  While operating a forklift, Mr. Wilson hit a door with the forklift.  (*Id*. at 148).  After his accident, Mr. Wilson left the scene of the accident and parked the forklift.  (Wilson Depo. at 14).  Mr. Wilson said he did not report the accident immediately because he was in shock.  (*Id*. at 24).  Mr. Wilson walked to his desk and heard an announcement for a meeting. (*Id*. at 14).  Mr. Wilson walked to the meeting which had been called and heard a command for the person who damaged the door to come forward as the meeting concluded.  (*Id*. at 13).  Mr. Wilson then reported the accident to his supervisor, Mr. Gentry Sullivan.  (*Id*. at 12).  Mr. Wilson estimated the time between the accident and his reporting the accident to be between ten and fifteen minutes.  (*Id*.

10

at 12, 23).  Mr. Wilson was not disciplined.  (English Depo. at 55).

While Mr. Wilson and Plaintiff were involved in somewhat similar accidents, they were not ultimately accused of the same or similar conduct.  Both men damaged materials within Defendant's plant.  However, unlike Mr. Wilson, Plaintiff never came forward and reported his accident, neither fifteen minutes later nor several days later.  (Freeman Depo. at 128).  Additionally, Mr. Wilson was never accused of "attempting to cover up and mislead management" concerning his incident.  Plaintiff was questioned about the incident by Mr. Benefield and still never admitted dropping the die.  Plaintiff told Mr. Benefield he "almost" dropped the dye.  (*Id*. at 133).  However, Plaintiff testified in his deposition that the die pitched down and he hit up with the crane quickly to catch it.  (*Id*. at 121).  Due to a perceived lack of candor about the incident, Plaintiff ultimately lost the trust of his supervisor, Mr. Benefield, who then recommended that he be terminated.  (English Aff. at ¶ 17).

Regardless of whether the die "pitched down," "dropped," or was "almost dropped," Plaintiff does not dispute that there was an incident which should have been reported to his supervisor.  Plaintiff's actions acknowledge the occurrence of this incident as Plaintiff admits examining the die and the floor immediately after the incident to check for damage.  (Freeman Depo. at 122).  Plaintiff was

11

terminated for failure to report an accident and denying that an accident had occurred.  Plaintiff has presented no evidence that he reported or admitted his incident involving the crane at any time.  Additionally, Plaintiff has presented no evidence that Mr. Wilson failed to report his accident involving the forklift, denied the occurrence of the incident, or attempted to cover up or mislead management concerning the incident. Furthermore,  Plaintiff has presented no evidence that Mr. Wilson was accused of any of the foregoing activities by Topre management. Therefore, Plaintiff and Mr. Wilson cannot be said to have been "involved in or accused of the same or similar conduct" as required by Eleventh Circuit precedent.

## IV.  CONCLUSION

Having considered the foregoing, court finds that Plaintiff has failed to establish any genuine issue of material fact sufficient to allow this case to proceed to trial.  It is therefore **ORDERED** that Defendant's motion for summary judgment is **GRANTED**.  The plaintiff's claims shall be **DISMISSED WITH PREJUDICE** by separate Order.

**DONE** and **ORDERED** this the 5th day of April, 2006.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE